[No. 1425-1.    Division One—Panel 1.    April 16, 1973.]

THE STATE OF WASHINGTON, *Respondent,* v. DON RAYMOND ANDERSON, JR., *Appellant.*

*Halverson, Strong & Moen, Lowell K. Halverson,* and *Wesley G. Hohlbein,* for appellant (appointed counsel for appeal).

*Christopher T. Bayley, Prosecuting Attorney, Patricia G. Harber* and *Douglas S. Dunham, Deputies,* for respondent.

JAMES, J.—By jury trial Don Raymond Anderson was convicted of first-degree murder. He pleaded insanity pursuant to RCW 10.76.010.

On appeal Anderson first contends that, in defining criminal insanity for the jury, the trial judge should have instructed in terms of the so-called *"Durham"* as opposed to the *"M'Naghten"* rule. He further asserts that, in any event, the instruction given "erroneously articulated and applied the *M'Naghten* rule." In *State v. Thomas,* 8 Wn. App. 495, 507 P.2d 153 (1973), we pointed out that the Washington Supreme Court has consistently adhered to its interpretation of the *M'Naghten* rule and has consistently rejected the *Durham* and other "irresistible impulse" definitions of criminal insanity. In *State v. Ferrick,* 81 Wn.2d 942, 506 P.2d 860 (1973), the Washington Supreme Court again reiterated its commitment to its version of *M'Naghten.* The instruction given was a correct definition of criminal insanity in Washington.

Anderson next claims that he was denied his constitutional right to trial by an impartial jury. The record discloses that, pursuant to RCW 10.49.050, three veniremen, who would under no circumstances impose the death penalty, were excused upon the state's challenge for cause. Anderson argues that after *Furman v. Georgia,* 408 U.S. 238, 33 L. Ed. 2d 346, 92 S. Ct. 2726 (1972), which declared the death penalty as imposed in recent years to be unconstitutional, the state can no longer have a valid interest in excluding jurors who will under no circumstances impose the death penalty.

Anderson was tried in 1971, before the *Furman* decision, and Washington law then permitted the death penalty in

first-degree murder cases. RCW 10.49.050 entitled the state to challenge for cause any veniremen who could under no circumstances impose a sentence authorized by law. *State v. Canaday*, 79 Wn.2d 647, 488 P.2d 1064 (1971). In language fully applicable to this case, the court in *State v. Ferrick, supra,* noted at page 945 that: "It is sufficient that at the time the instant case was tried, the statutes in question required the jury to determine whether the death penalty should be imposed."

Finally, Anderson claims error in the denial of his motion to suppress the opinion testimony of a psychiatrist called by the state in rebuttal of Anderson's insanity defense. The relevant circumstances are as follows: Anderson was arrested shortly before noon, 3 days after the homicide. He was immediately advised of his constitutional rights by one of the arresting officers. The prosecution, anticipating an insanity defense and concerned with Anderson's competency to stand trial, arranged for a psychiatric interview which took place in the city jail in the late afternoon of the day of the arrest. The murder charge was filed 7 days later.

During the course of the interview, an attorney appeared at the jail and asked to see Anderson. The attorney was required to wait until the psychiatrist had completed his interview before he was permitted to see Anderson.

The trial judge conducted a fact finding hearing in the absence of the jury before ruling on Anderson's motion to suppress the psychiatrist's testimony. The trial judge found that at the time of his appearance at the city jail, the attorney had not yet been retained or appointed to represent Anderson; that the prosecution was not advised that Anderson had counsel when the psychiatric interview was arranged; that at one point during the psychiatric interview, the attorney, who was a former prosecutor and who was acquainted with the psychiatrist, opened the door of the interviewing room and asked how much longer the interview would last, and that at no time did the attorney expressly indicate to jail personnel, the psychiatrist or the

prosecution, that he wanted the psychiatric interview to be terminated.

The trial judge further found that the psychiatrist fully advised Anderson of his constitutional right to remain silent and his right to have legal counsel; that not only did Anderson indicate that he understood his rights, but in fact he exercised them by refusing to answer questions concerning his acquaintance with the victim and questions concerning the commission of the crime.

Anderson contends that the custodial interrogation by the psychiatrist was in violation of his right to the "assistance of counsel for his defense" at a critical stage of the prosecution, guaranteed him by the United States Constitution's Sixth Amendment. Anderson urges that the landmark cases of *Miranda v. Arizona,* 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602, 10 A.L.R.3d 974 (1966), and *Escobedo v. Illinois,* 378 U.S. 478, 12 L. Ed. 2d 977, 84 S. Ct. 1758 (1964) require that the state's violation of this fundamental constitutional right be judicially condemned, as in *Gilbert v. California,* 388 U.S. 263, 273, 18 L. Ed. 2d 1178, 87 S. Ct. 1951 (1967) by "a *per se* exclusionary" ruling suppressing the testimony of the psychiatrist.

The state's response to Anderson's contention is fourfold. The state first cites *Kirby v. Illinois,* 406 U.S. 682, 32 L. Ed. 2d 411, 92 S. Ct. 1877 (1972) as authority for the assertion that an accused's constitutional right to counsel does not attach until "the initiation of adversary judicial criminal proceedings—whether by way of formal charge, preliminary hearing, indictment, information, or arraignment." *Kirby v. Illinois, supra* at 689. Second, citing *Lee v. County Court,* 27 N.Y.2d 432, 318 N.Y.S.2d 705, 267 N.E.2d 452 (1971), the state contends that by entering a plea of criminal insanity, Anderson necessarily waived his Fifth and Sixth Amendment rights insofar as they were applicable to a psychiatric examination. Third, the state urges that the statements which Anderson made to the psychiatrist were "verbal acts" analogous to physical evidence and therefore not affected by Fifth and Sixth Amendment rights. *Cf.*

*United States v. Baird,* 414 F.2d 700 (2d Cir. 1969); *State v. Whitlow,* 45 N.J. 3, 210 A.2d 763 (1965). Finally, the state contends that Anderson fully understood and exercised his constitutional rights and waived his right to claim them.

■■  Anderson's argument on appeal is directed only to the state's assertion that under the rule of *Kirby,* Anderson had no constitutional right to be represented by counsel at the psychiatric interview because formal adversary judicial proceedings had not yet been initiated.

The facts of *Kirby* impelled the plurality to conclude at page 690 that a " 'critical stage of the *prosecution,*' " had not been reached when, at a time "long before the commencement of any prosecution whatever", the defendant was required to submit to a police station-house showup without being advised of his right to counsel. However, the plurality opinion expressly recognizes that

> the doctrine of *Miranda v. Arizona,* 384 U.S. 436, has no applicability whatever to the issue before us; for the *Miranda* decision was based exclusively upon the Fifth and Fourteenth Amendment privilege against compulsory self-incrimination, upon the theory that custodial *interrogation* is inherently coercive.

*Kirby v. Illinois, supra* at 688.

Anderson's psychiatric interview was unquestionably a "custodial interrogation," and under the *Miranda-Escobedo* doctrine, it was constitutionally required that Anderson be advised of his right to counsel, even though his formal criminal *prosecution* had not commenced.

We are satisfied, however, that the state met its "heavy" *Miranda* burden of proving that Anderson understood and that he voluntarily, knowingly and intelligently waived his constitutional right to be represented by counsel at the psychiatric interview. The trial judge's findings are supported by substantial evidence and fully support his conclusions that Anderson's waiver met *Miranda*'s standards. We may not substitute our judgment for that of the trial judge. *State v. Cashaw,* 4 Wn. App. 243, 480 P.2d 528 (1971).

Accordingly, we do not consider the state's contention

that by his plea of insanity Anderson waived his right to challenge the manner in which the state procured psychiatric rebuttal evidence. Neither do we reach the state's remaining contention that in any event a psychiatric examination for rebuttal purposes should be considered to be in the nature of a physical examination and therefore free from constitutional self-incriminating safeguards.

Affirmed.

SWANSON, C.J., and FARRIS, J., concur.

Petition for rehearing denied June 5, 1973.

Review denied by Supreme Court August 27, 1973.